**No. 24-1224**

_____

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

_____

**UNITED STATES OF AMERICA**
Appellee

v.

**JOSE ANGEL VELAZQUEZ-SEDA, a/k/a Tito Chuleta,**
Defendant-Appellant

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

_____

**CORRECTED BRIEF OF DEFENDANT-APPELLANT**

_____

Mary June Ciresi
Attorney at Law
PO Box 40865
Providence, RI 02940
401.447.5715 (Mobile)
401.829.4866 (Fax)
mjciresi@ciresilaw.com

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION....................................................1

STATEMENT OF ISSUES PRESENTED...........................................1

STATEMENT OF THE CASE..........................................................1

SUMMARY OF THE ARGUMENT...................................................11

ARGUMENT.................................................................................12

    1. THE GOVERNMENT FAILED TO FULFILL ITS
       OBLIGATIONS PURSUANT TO A PLEA AGREEMENT
       BETWEEN THE PARTIES................................................ 12

    2. STANDARD OF REVIEW....................................................21

CONCLUSION..............................................................................23

CERTIFICATE OF COMPLIANCE ..................................................25

CERTIFICATE OF SERVICE............................................................26

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

*Santobello v. New York*, 404 U.S. 257, 262 (1971)......................................15

*United States v. Almonte-Nuñez,* 771 F.3d 84, 89 (1st Cir. 2014)..........17, 22

*United States v. Aponte-Colon*, 22-1422 (1st Cir. Jun 17, 2024)................19

*Unites States v. Clark*, 55 F.3d 9, 14 (1st Cir. 1995) ..................12, 13, 22, 23

*United States v. Cortes-Lopez*, 22-1918 (1st Cir. May 10, 2024.............18, 21

*United States v. Lessard*, 35 F.4th 37, 42 (1st Cir. 2022........................18, 21

*United States v. Mojica-Ramos*, 22-1204, 22-1205 (1st Cir. Jun 06, 2024) ......................................................................................................15, 18

*United States v. Torres-Rosario*, 658 F.3d 110, 116 (1st Cir. 2011).............21

*United States v. Ubiles-Rosario*, 867 F.3d 277, 283 (1st Cir. 2017 .............19

## STATUTES

18 U.S.C. § 3553(a) ........................................................................13, 19

18 U.S.C. § 3231 ...................................................................................... 1

28 U.S.C. § 1291 ...................................................................................... 1

## GUIDELINE PROVISIONS

U.S.S.G. § 2D1.1(c)(7) ...............................................................................9

U.S.S.G. § 2D1.1(a)(5) ...............................................................................9

U.S.S.G. § 2D1.1(b)(1) ...............................................................................9

## Note on Citations to Record

Materials contained in the Addendum bound at the rear of the brief are cited as "Add. ____". Citation to the Appendix appear in this brief as "App____." Citation to the Supplemental Appendix appear in this brief as "SA____." Citations to documents which are part of the record in this case but which have not been reproduced in the Appendix appear as "R____", the number corresponding to the document's number on the District of Puerto Rico PACER docket for United States v. Jose Angel Velazquez-Seda, a/k/a Tito Chuleta, 3:22-cr-00409-SCC-15.

# STATEMENT OF SUBJECT MATTER
# AND APPELLATE JURISDICTION

This appeal arises from a judgment in a criminal case. The district court had jurisdiction under 18 U.S.C. §3231. The Judgment of Conviction entered on February 9, 2024. App. 18. A notice of appeal was filed on the February 23, 2024. App. 20. This Court has jurisdiction under 28 U.S.C. §1291.

# STATEMENT OF ISSUES PRESENTED

**1. THE GOVERNMENT FAILED TO FULFILL ITS OBLIGATIONS PURSUANT TO A PLEA AGREEMENT BETWEEN THE PARTIES**

**2. STANDARD OF REVIEW**

# STATEMENT OF THE CASE

A conspiracy for a large scale drug trafficking organization (DTO) was formed in 2019. SA. 7 – 12.   The object of the conspiracy was the distribution of cocaine base (crack),  heroin, powder cocaine and marijuana at the Santa Catalina Public Housing Project and other areas located within the Municipality of Yauco, Puerto Rico.  SA. 7.

Jesús M. Castro-Oliveras was the main leader of the DTO.  SA. 9. The DTO purchased heroin, cocaine and marijuana at wholesale prices for distribution in street quantity amounts. SA. 7, 9.  In order for the DTO to conduct its business, the leaders would establish different locations as drug

points.  SA. 7.  The fluid /non-fixed mobile drug point moved/relocated throughout different locations within the public housing project, including areas between buildings, the basketball court, a tree in front of an old school, inside the Santa Catalina Public Housing Project. SA. 7. The leaders would designate the third floor of a building as a drug point for the transfer of controlled substances from the balcony using a rope down to the first floor. SA. 7.

Some of the defendants weighed, cut, divided and packaged heroin, crack, cocaine and marijuana in small "baggies," vials or packaging for subsequent sale at a drug distribution point. SA. 7. Cocaine was transformed into crack cocaine for sale and distribution. SA. 7. Narcotics were often prepared in the apartments of other co-conspirators located within the Santa Catalina Public Housing Project and hidden in abandoned vehicles located within the Housing Project.  SA. 8.

Some defendants concealed ammunition, magazines and firearms in apartments registered under other co-conspirators. SA. 8. Some defendants would have access to different vehicles, some stolen, to transport money, narcotics and firearms. SA. 8. Some of the defendants routinely possessed, carried, brandished, and used different types of firearms, including but not limited to modified automatic firearms and high-capacity rifles, in order to

protect themselves, the narcotics and their profits from rival drug trafficking gangs. SA. 8.

Even though Jesús M. Castro-Oliveras was the boss of the DTO, there were other leaders within the organization. SA. 7, 9. The different roles of the organization consisted of leaders, enforcers, runners, sellers and facilitators. SA. 9. The leaders were in direct control and supervision of drug trafficking activities at the drug points. SA. 9. The leaders of the DTO had final authority as to disciplinary actions to be imposed upon residents of the Santa Catalina Public Housing Project and/or members of the conspiracy, as well as rival gang members. SA.8.

Leaders, drug point owners, runners and sellers of this organization divided the proceeds of the drug trafficking sales among themselves and their subordinates. SA. 7. Members of the DTO used force, violence, and intimidation to maintain control of the drug trafficking operations, to intimidate rival drug trafficking organizations and to discipline members of their own drug trafficking organization. SA.8.

The enforcers were protectors who carried and used firearms to protect the leaders, members of the DTO narcotics, proceeds, drug distribution points. SA. 9. The leaders often gave instructions to the enforcers. SA. 9.

Runners worked under the supervision of the leaders. SA. 9. Runners were responsible for managing the street sellers, the daily activities of the drug points, and scheduling the street sellers for work. SA. 9. Runners provided the  street sellers with narcotics for further distribution at the drug point. SA. 9. Runners collected the proceeds from the drug sales, paid the street sellers and prepared ledgers to keep track of the sales at a drug point. SA. 9. At times, runners were responsible for recruiting street sellers and additional runners. SA. 9.

Street sellers distributed quantities of heroin, cocaine, crack and marijuana. SA. 9. They were accountable for the drug proceeds and quantities of narcotics from the sales. SA. 9. The defendant acted as a seller for the DTO.[1] He distributed street quantity amounts of controlled substances. SA. 9. He was accountable for the drug proceeds and narcotics sold at distribution point. SA. 9.

Facilitators permitted the use of their residences for storage of narcotics, paraphernalia, firearms, and ammunition. SA. 9. Their residences were also used to package narcotics. SA. 9. Some facilitators were lookouts for the DTO to alert other members of the presence of law enforcement and rival drug traffickers. SA. 9.

---

[1] According to the PSR, Jose Ángel Velázquez-Seda, was a runner and seller for the DTO. SA. 56. The stipulation of facts indicated he was a seller. App.

Twenty three members of the DTO were indicted for conspiracy and other offenses on September 24, 2022. App. 16 – 33. The defendant was charged in Count One: Conspiring with others to Possess with Intent to Distribute and/or to Distribute Controlled Substances, to wit: in excess of two hundred and eighty (280) grams of crack cocaine, in excess of one (1) kilogram of heroin, in excess of five (5) kilograms of cocaine and less than 50 kilograms of marihuana within one thousand (1,000) feet of the Santa Catalina Public Housing Project, a facility owned by a public housing authority, and other areas nearby the municipality of Yauco, Puerto Rico in violation of 21 U.S.C. 841(a)(1), 846, and 860; Count Two, aiding and abetting others to possess with intent to distribute one (1) kilogram of heroin within one thousand (1,000) feet of the Santa Catalina Public Housing Project in violation of 21 U.S.C. 841(a)(1), (b)(1)(A)(i), 860, 18 U.S.C. 2; Count Three charging him with aiding and abetting the possession with intent to distribute two hundred and eight (280) grams or more of crack cocaine in violation of 21 U.S.C. 841(a)(1), (b)(1)(A)(iii) and 860; Count Four charging him with aiding and abetting the possession with intent to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. 841(a)(1), (b)(1)(A)(ii) and 860, 18 U.S.C. 2; Count Five charged him with aiding and abetting other to possess with intent to distribute more

than fifty (50) kilograms of marihuana in violation of 21 U.S.C. 841(a)(1), (b)(1)(C) and 860, and 18 U.S.C. 2. App. 16 – 33.

Defendant pled guilty to Count One of the indictment on September 12, 2023. App. 49. Defendant entered into a plea agreement with the government on the same date. App. 34. The plea agreement contained a stipulation of salient facts, particularly a specific quantity of controlled substances for use in calculating an advisory guideline. App. 35. Defendant acknowledged that "[w]hile multiple kilograms of heroin, cocaine, cocaine base and marijuana were distributed during the conspiracy, for the sole purpose of this plea agreement, the defendant acknowledges that during the span of the conspiracy he possessed with intent to distribute at least 2 KG but less than 3.5 KG of cocaine." App. 46, 47. The resulting imprisonment exposure was no less than five (5) years of incarceration up to eighty (80) years of incarceration. App. 35.

In exchange for the defendant's guilty plea, his obligations and waiver of his rights in accordance with the plea agreement, the government agreed to dismiss Counts Two through Six of the Indictment at the time of sentencing. App. 41, 57. The government agreed to stipulate to an agreed amount of narcotics for sentencing purposes, specifically at least 2 KG but less than 3.5 KG of cocaine, thereby exposing the defendant to a mandatory

prison term of 5 years up to 80 years rather than an exposure of 10 years to serve up to life. App. 35. The government agreed to recommend a sentence up to 72 months regardless of the defendant's criminal history category. App. 38.

The Pre-sentence Investigative Report (PSR) set forth a conservative estimate of the drug quantities distributed during the course of the conspiracy. SA. 11. The PSR noted that the drug points operated twenty four (24) hours a day. SA. 11. The chart identifies the type of the controlled substance, the cost of street level quantities of the controlled substance and the total amount of kilograms distributed during the course of the conspiracy as well as the approximate total proceeds. SA. 11.

| Drug Type: | Net weigth (g)/ unit accordin g to DEA | Units / package | Net weigth (g) per package | Number of package s sold per shift | Total of package s sold per day (2 shifs in 24hrs) (#pkgs x 2) | Net weigth (g) of total drugs sold per day (24hrs) and 2 shifts | Net weigth (g) of total drugs sold at drug point in a year | Span of the conspira cy (6/2019- Present) = 3 yrs | Total Grams (g) Sold During the Charged Conspiracy Period | Total kilos during Conspir acy Period | TOTAL KILOS PER SUBSTANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cocaine $3 | 0.193 | 25 | 4.813 | 7 | 14 | 67.38 | 24,592 | 3 | 73,775.63 | 74 | |
| Cocaine $6 | 0.193 | 10 | 1.925 | 7 | 14 | 26.95 | 9,837 | 3 | 29,510.25 | 30 | |
| Cocaine $10 | 0.193 | 10 | 1.925 | 7 | 14 | 26.95 | 9,837 | 3 | 29,510.25 | 30 | Total 134 kilos cocaine |
| Heroin $3 | 0.115 | 25 | 2.875 | 5 | 10 | 28.75 | 10,494 | 3 | 31,481.25 | 31 | |
| Heroin $6 | 0.115 | 25 | 2.875 | 8 | 16 | 46 | 16,790 | 3 | 50,370.00 | 50 | Total 81 kilos heroin |
| Crack $5 | 0.1 | 20 | 2 | 6 | 12 | 24 | 8,760 | 3 | 26,280.00 | 26 | |
| Crack $10 | 0.1 | 20 | 2 | 3 | 6 | 12 | 4,380 | 3 | 13,140.00 | 13 | Total 39 kilos crack |
| Marijuana de $5 | 0.463 | 15 | 6.938 | 5 | 10 | 69.38 | 25,322 | 3 | 75,965.63 | 76 | Total 76 kilos marihuana |

| Drug Type: | Price per unit | Units / Package | Sale per Package | Number of Packages sold per shift | Total of Packages sold per day (2 shifts in 24hrs) (#pkgs x 2) | Total Sales per day (2 shifts/day) | Approximate total proceeds from drug point in per year | Span of Conspiracy (6/2019-Present) = 3 yrs | Approximate total proceeds during Conspiracy Period |
|---|---|---|---|---|---|---|---|---|---|
| Cocaine $3 | $3.00 | 25 | $75.00 | 7 | 14 | $1,050.00 | $383,250.00 | 3 | **$1,149,750.00** |
| Cocaine $6 | $6.00 | 10 | $60.00 | 7 | 14 | $840.00 | $306,600.00 | 3 | **$919,800.00** |
| Cocaine $10 | $10.00 | 10 | $100.00 | 7 | 14 | $1,400.00 | $511,000.00 | 3 | **$1,533,000.00** |
| Heroin $3 | $3.00 | 25 | $75.00 | 5 | 10 | $750.00 | $273,750.00 | 3 | **$821,250.00** |
| Heroin $6 | $6.00 | 25 | $150.00 | 8 | 16 | $2,400.00 | $876,000.00 | 3 | **$2,628,000.00** |
| Crack $5 | $5.00 | 20 | $100.00 | 6 | 12 | $1,200.00 | $438,000.00 | 3 | **$1,314,000.00** |
| Crack $10 | $10.00 | 20 | $200.00 | 3 | 6 | $1,200.00 | $438,000.00 | 3 | **$1,314,000.00** |
| Marijuana | $5.00 | 15 | $75.00 | 5 | 10 | $750.00 | $273,750.00 | 3 | **$821,250.00** |
| **TOTAL PROCEEDS OF DTO DURING CONSPIRACY PERIOD** | | | | | | | | | **$10,501,050.00** |

The government incorporated a guidelines sentencing chart reflecting their recommended application of the Guidelines into the plea agreement. App. 37.

| Sentencing Guidelines Calculations Table COUNT ONE 18 USC § 841(a)(1), (b)(1)(B) and § 846 (Conspiracy to Possess with Intent to Distribute Controlled Substances) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Base Offense Level U.S.S.G. § 2D1.1 (c)(7) At least 2 KG but less than 3.5 KG of Cocaine; | | | | | | | | 26 |
| Protected Location USSG § 2D1.2(a)(1) | | | | | | | | +2 |
| Acceptance of Responsibility, U.S.S.G. § 3E1.1 (a)&(b) | | | | | | | | -3 |
| TOL | CHC I | CHC II | CHC III | CHC IV | CHC V | CHC VI | Total Offense Level | 25 |
| 25 | 057-071 | 063-078 | 070-087 | 084-105 | 100-125 | 110-137 | | |

Defendant acknowledged that the court was not required to accept the projected application of the Guidelines. App. 37.

United States Probation determined the application of the Guidelines. The defendant's sentencing guideline range was calculated according to the parties' stipulated amount of least 2 kilograms but less than 3.5 kilograms of cocaine. SA. 13. The stipulated quantity of cocaine resulted in a base offense level 26 under the U.S.S.G. 2D1.1(a)(5) and 2D1.1(c)(7). SA. 13. The offense occurred in a protected location, resulting in an addition 2 levels were added to level 26. *Id.* The adjusted base offense level was calculated at level 28. SA. 13. U.S.S.G. 2D1.1(b)(1), specific offense characteristics, warranted a two  level increase because dangerous weapons, including firearms, were possessed by some of the co-conspirators. SA. 13.

Probation determined that the adjusted offense level was level 30. SA. 13. The defendant received a 2 level reduction for acceptance of responsibility and an addition 1 level reduction for timely notifying the government of his intent to enter a guilty plea. SA. 14. The resulting total offense level was level 27. SA. 14.  Ten (10) criminal history points resulted in a Criminal History Category (CHC) V. The sentencing range for level 27, criminal history category V is 120 months to 150 months incarceration. SA. 25. Neither the defense or government objected to the guideline calculations. App. 76, 77. The Court accepted the Guideline calculations in the PSR. App. 81.

The court noted the defendant's sentencing memorandum at the sentencing hearing. App. 76. In accordance with the plea agreement, the defendant requested a sentence of 60 months of imprisonment. App. 77. Defense counsel asked the court to consider the defendant's health condition. The court was advised of the defendant's health issues, particularly the defendant's recent heart attack due to his underlying heart condition and his recent hospitalization due to a heart attack. App. 77.

The government half-heartedly recommended a sentence of 72 months in accordance with the plea agreement and due to the defendant's extensive criminal history. App. 78. The court noted that a sentence of 72 months was a variant sentence from the applicable guideline, which was 120-150 months of incarceration. App. 79. The government informed the Court that it was bound by the plea agreement but the court was free to deviate from the agreement of the parties. Add. 11, App. 79. The government further stated to the court that it "has discretion …to do what the Court thinks is the correct sentencing in the case. And it is a significant criminal history with a Category V." Add. 11, App. 79.

The court considered the decision of the government to enter into the plea agreement along with the other factors. App. 82. The court determined that 96 months incarceration was the "just and appropriate sentence."

App. 83.  The court believed a sentence of 96 months was substantially below the guideline range minimum of 120 months. App. 83. Finally, the Court found that "96 months is just and not greater than necessary" and sentenced the defendant. App. 83.

The plea agreement contained a limited waiver of appeal clause. App 38.  The defendant waived his appellate rights only if the court sentenced him to 72 months imprisonment or less. App. 38. Since the sentence was greater than 72 months, the defendant retained his appellate rights. App. 83. The defendant appealed his sentence on February 23, 2024.  App. 15.

## SUMMARY OF THE ARGUMENT

The defendant was facing substantial prison time if convicted of the offenses set forth in the indictment.  In an effort to cut his losses, the defendant contracted with the government for a particular sentencing recommendation in exchange for his guilty plea and waiver of rights.

The government technically complied with the terms of the plea agreement and requested the court to impose a sentence of 72 months on the defendant in accordance with the plea agreement. Unfortunately for the defendant, the government's request was insincere and apologetic.

The parties calculated an offense level under the guidelines but made no agreement to criminal history. The PSR revealed a different calculation

that was much more severe than that agreed to by the parties. Unhappy with the plea agreement, the government reminded the court of its authority to sentence an individual to what the court believes is the correct sentence. The government's cursory request for a 72 month sentence was insufficient to fulfill its obligation under the plea agreement. In addition, the government's comments to the court belied its recommendation by advising the court that it was not bound by its sentencing recommendation.

The government effectively breached its obligation under the plea agreement thereby prejudicing the defendant and depriving him of the plea agreement.

## ARGUMENT

### 1. THE GOVERNMENT FAILED TO FULFILL ITS OBLIGATIONS PURSUANT TO A PLEA AGREEMENT BETWEEN THE PARTIES.

.

The plea agreement is a binding contract between the government and the defendant. Courts "are guided in [the] interpretation of plea agreements by general principles of contract law." *United States v. Clark*, 55 F.3d 9, 12 (1st Cir. 1995). The government and the defendant negotiated the terms of the plea agreement and formed a contract that was all inclusive, detailing the obligations of the government and the obligations of the defendant along with a waiver of his constitutional rights. App. 35-48.

The defendant executed the plea agreement on September 12, 2023, before the change of plea hearing. App. 44. The government signed the agreement on August 30, 2023. App. 44.

It is clear from the plea agreement that the parties were mindful of the application of the United States Sentencing Guidelines (Guidelines) and the mandates of 18 U.S.C. § 3553(a). The government and the defendant intentionally included specific language in the agreement that reflected their states of mind. After "due consideration" of the sentencing factors laid out in 18 U.S.C. § 3553(a), the government and the defendant reached an agreement as to the application of the advisory guidelines and incorporated a chart reflecting the various sentencing ranges, according to criminal history, into the plea agreement. App.37.

"Contractual principles apply insofar as they are relevant in determining what the government "owes" the defendant. If the defendant lives up to his end of the bargain, the government is bound to its promises." *Clark*, 55 F.3d 12. There were no representations or suggestions made by the government that the defendant failed to live up to his contractual obligations. The defendant pled guilty on September 12, 2023, fulfilling an important obligation under the plea agreement. App. 49. The defendant's specific performance of his obligations in accordance with the plea

agreement renders the government's obligations mandatory under the contract.

The government did not factor the defendant's CHC in drafting the plea agreement. App. 37. Because of the uncertainty of the defendant's CHC,  a guideline sentencing chart was included in the plea agreement, detailing the sentences for six CHC columns with corresponding sentence ranges for a level 25. App. 37. Aware of the possibility that the defendant may have a high CHC as shown in the guideline sentencing chart, the government nonetheless agreed to a sentencing cap. The government bound itself to recommend a sentence up to seventy two months regardless of the defendant's CHC. App. 38.

The defendant had numerous obligations and waivers of significant rights under the terms of the plea agreement. The defendant was obligated to plead guilty to Count One of the Indictment, which had a term of imprisonment of no less than 10 years up to life. App. 35. Defendant satisfied this condition on September 12, 2023 when he pled guilty to Count One of the indictment. App. 49. He agreed to waive his right to appeal if the sentence imposed by the court was 72 months or less. App. 38.

Pursuant to the terms of the plea agreement he could not request an adjustment or departure under the Guidelines without breaching the

agreement. App. 38-39. He was obligated to forfeiture assets to the United States and waive interest to thereto. App. 42. Finally, the defendant agreed to waive important trial rights afforded to him by statute and the Constitution of the United States. and he did so when he pled guilty. App. 39-40. "[B]ecause [a] defendant who enters into a plea agreement waives a panoply of constitutional rights[,] . . . we hold prosecutors to 'the most meticulous standards of both promise and performance.'" *United States v. Mojica-Ramos*, 22-1204, 22-1205 (1st Cir. Jun 06, 2024).

The government's agreement to recommend a sentence of not more than 72 months to serve was favorable to the defendant in light of the possible sentence exposure reflected in the guideline sentencing chart. App. 37. "[A] constant factor is that when a plea rests in any significant degree on a promise or agreement of the government, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). One may surmise that the defendant knew his own criminal history. The guideline sentencing chart, included in the agreement, reflected the worst possible advisory guideline sentencing range for a level 25, which was 110 – 137 months to serve. App. 37. A 72 month sentence enticed the defendant to agree to the terms of the plea agreement with a sentencing cap.

At the beginning of the sentencing hearing, district court commented that "the PSR contains guideline calculations that were different from the plea agreement in the sense that in the plea agreement between the parties did not contemplate two additional points for foreseeability of the use of firearms and also the criminal history which turned out to be a Criminal History Category of V." App. 77. According to the PSR, which was not objected to by either party, the advisory guideline range was 120 – 150. App. 76.

The government did not anticipate the guideline calculation in the PSR. It is clear from the government's words, that it regretted the contract with the defendant. Burdened by the terms of the plea agreement, the government half-heartedly requested a 72 month sentence in technical compliance with its obligation under the plea agreement. App. 78. The government's sentencing recommendation was nothing more than paying lip service to the court. This is also evident by the pronouncement of the government that it was bound by the plea agreement when the court mentioned the variance between the sentencing range in the PSR and the agreement of the parties. App. 78. The government technically complied with the plea agreement while insinuating a higher sentence was

warranted. The government's breach was obvious from the colloquy between the Court and government at the time of sentencing.

PROSECUTOR: Your Honor, it's the position of the government, in accordance with the plea agreement, that 72 months is the appropriate sentence. I base that on the significant criminal history which includes multiple acts of domestic violence and a previous 841 conviction in 2012.

THE COURT: And it's still a variant sentence from the applicable guideline which is from 120 to 150 months.

PROSECUTOR: I agree, Your Honor. I'm bound by the plea agreement so --

THE COURT: I'm aware. I am aware.

PROSECUTOR: But the Court has discretion obviously to do what the Court thinks is the correct sentence in this case. And it is a significant criminal history with a Category V.

THE COURT: All right. Okay.

App. 79.

"When the government enters into a plea agreement with a criminal defendant, it acquires a duty to carry out the obligations it has undertaken in both letter and spirit. *United States v. Almonte-Nuñez,* 771 F.3d 84, 86 (1st Cir. 2014). The government must serve more than simple "lip service

to, or technical compliance with, the terms of a plea agreement," in part because the defendant is entitled to both the "benefit of the bargain struck in the plea deal and to the good faith of the government." *United States v. Cortes-Lopez*, 22-1918 (1st Cir. May 10, 2024) quoting *United States v. Lessard*, 35 F.4th 37, 42 (1st Cir. 2022). Where a defendant alleges that a government breached a plea agreement, "[w]e consider the totality of the circumstances in determining whether a government engaged in impermissible tactics." *United States v. Mojica-Ramos*, 22-1204, 22-1205 (1st Cir. Jun 06, 2024)**.**

The government was clearly taken aback by the guideline calculations in the PSR and the defendant's criminal history. At first, the government advised the court that in accordance with the plea agreement, the sentencing recommendation is 72 months based upon the defendant's significant criminal history. The government made it clear, even though the court was already aware that it was obligated to recommend a sentence of up to 72 months because of the plea agreement. The government essentially reminding the court that its hands were tied is hardly endorsing a 72 month sentence.

"The government cannot satisfy such standards merely by paying lip service to, or technically complying with, the plea agreement. *United States*

*v. Ubiles-Rosario*, 867 F.3d 277, 283 (1st Cir. 2017)." *United States v. Aponte-Colon*, 22-1422 (1st Cir. Jun 17, 2024). That is exactly what occurred in this case. The government recited its obligation pursuant to the terms of the plea agreement. The court noted the government's recommendation was a variant sentence from the applicable guideline range of 120 - 150. App. 79. The government agreed with the court that it was a variant sentence but reminded the court that the government it was bound by the plea agreement, telegraphing the inability to extricate itself from the agreement. The government revealed its regret by what followed: "I'm bound by the plea agreement so—" App. 79. This revealed the government's lack of commitment to the terms of the plea agreement. It effectively let the court know there was nothing the government could do despite the defendant's lengthy criminal history and the guideline range in the PSR.

The court announced that it reviewed the advisory guideline calculations and found that the "PSR adequately applied the guideline computations, which satisfactorily reflect the components of this offense by considering its nature and circumstances." App. 80-83. The court made a general statement that it considered all of the sentencing factors set forth in 18 U.S.C. 3553(a). App. 81. The court considered the intent of the parties

when they signed the plea agreement. "When the parties entered into this agreement the parties did not contemplate the two points for foreseeability of firearms and they entered into this agreement without considering the criminal history which is substantial in the way of 13 convictions." App. 77. The court repeated the government's characterization of the defendant's criminal history. The government mentioned the defendant's criminal history on two occasions, characterizing it as substantial. Based on court's comments, the court was swayed by the government's implication that a higher sentence was necessary. The court essentially relieved the government of its obligation under the plea agreement even though the government bound itself in the plea agreement without anticipating additional sentencing enhancements.

The government effectively undermined it's sentencing recommendation by unnecessarily mentioning that it was bound by the plea agreement. It again undermined the sentencing recommendation by reminding the court of its discretionary authority and the defendant's significant criminal history. The defendant's waiver of his constitutional rights was rendered meaningless by the government's breach of the plea agreement.

**2. STANDARD OF REVIEW**

The defendant did not object to the government's breach of the plea agreement to the district court. The appellate standard of review is for plain error. "*United States v. Lessard*, 35 F.4th 37, 42 (1st Cir. 2022). Using the plain error standard of review, the defendant must demonstrate "(1) there was error, (2) it was plain, (3) the error affected the defendant's substantial rights, and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cortes-Lopez*, 22-1918, 9-10 (1st Cir. May 10, 2024)." The plain error standard "is not easy to meet, because it requires error, plainness, prejudice to the defendant and the threat of a miscarriage of justice." *United States v. Torres-Rosario*, 658 F.3d 110, 116 (1st Cir. 2011).

The error that occurred was the government's breach of the plea agreement. The breach was obvious from the colloquy between the Court and prosecutor at the time of sentencing. The government recited its obligation pursuant to the plea agreement when it recommended a sentence of 72 months yet felt compelled to remind the court that it was bound by the agreement. App. 78-79. The court was already aware that the prosecutor was bound by the terms of the plea agreement. App. 79. Despite the terms of the plea agreement, the government reminded the court of its

discretionary authority in disregarding the recommendation of the parties and noted that the defendant's criminal history was a Category V. App. 79.

The prosecutor's breach of the plea agreement affected the defendant's substantial rights. "An error is deemed to affect substantial rights when it likely affected the outcome of the proceedings." *United States v. Almonte-Nuñez,* 771 F.3d 84, 89 (1st Cir. 2014). The prosecutor made it clear to the court that it that 72 months to serve was insufficient in light of the defendant's significant criminal history, which the prosecutor advised were prior drug offenses and domestic violence offenses. App.78. "The reason [the prosecutor's breach cannot be harmless] is obvious; it is the defendant's rights which are being violated when the plea agreement is broken or meaningless. It is his waiver which must be voluntary and knowing. He offers that waiver not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court. If they are not adequate, the waiver is ineffective." *Unites States v. Clark*, 55 F.3d 9, 14 (1st Cir. 1995).

The defendant waived substantial rights in exchange for the government's sentencing recommendation. App. 38-40. The government's request for a 72 month sentence was inadequate to fulfill its obligation in accordance with the plea agreement.  Before pronouncing sentence, the

court noted that it considered the plea agreement and the parties lack of foreseeability in guideline calculations. App. 77. The court sentenced the defendant to a prison term of 96 months. Add. 2, App. 83.

"'[A] prosecutorial failure to fulfill a promise or to make a proper promise is not rendered harmless because of judicial refusal to follow the recommendation or judicial awareness of the impropriety." *Correale,* 479 F.2d at 949. *Clark*, 55 F.3d at 13. The government's comments to the court underscores its failure to fulfill the obligations under the plea agreement. The comments to the court influenced the outcome of the proceedings.

The government's conduct was worse than going through the motions when it made its sentencing recommendation. The government went above and beyond to undermine the contract by reminding the court that "the Court has discretion obviously to do what the Court thinks is the correct sentence in this case. And it is a significant criminal history with a Category V." Add. 12. The government's conduct rendered the sentencing hearing was unfair for the defendant who bargained for the government's meaningful sentencing recommendation.

## CONCLUSION

The defendant has meet the standard for plain error review due to the government's obvious breach of the parties plea agreement. Though few

words were spoken by the government, the words were enough to communicate to the court that the government did not believe that its sentencing recommendation was appropriate under the circumstances. This constitutes a breach of the plea agreement. Defendant seeks to have the case remanded for resentencing.

Respectfully submitted,
By his attorney,

s/ MJ Ciresi
Mary June Ciresi
PO Box 49865
Providence, RI 02940
401.447.5715
mjciresi@ciresilaw.com

_____

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**
_____

**UNITED STATES OF AMERICA**
Appellee

v.

**JOSE ANGEL VELAZQUEZ-SEDA, a/k/a Tito Chuleta,**
Defendant-Appellant
_____

# CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS
_____

This brief has been prepared using:

14 point, proportionally spaced, serif typeface (such as CG Times or Times New Roman). Specify software name and version, typeface name, and point size below:

Microsoft Word for Mac Office 16, 14-point Georgia

EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; addendum; and the certificate of service, appellant's Brief contains, in total:
4678 words.

I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the word or line printout.

/s/ MJ Ciresi
Mary June Ciresi

## CERTIFICATE OF SERVICE

I hereby certify that on 12th day of September 2024, the Corrected Brief of the Appellant was electronically filed with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system including:

Mariana E. Bauza Almonte
Richard Vance Eaton
Joseph L. Russell
Maarja Tiganik Luhtaru

s/MJ Ciresi

**No. 24-1224**

_____

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

_____

**UNITED STATES OF AMERICA**
Appellee

v.

**JOSE ANGEL VELAZQUEZ-SEDA, a/k/a Tito Chuleta,**
Defendant-Appellant

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

_____

**ADDENDUM**

_____

Mary June Ciresi
Attorney at Law
PO Box 40865
Providence, RI 02940
401.447.5715 (Mobile)
401.829.4866 (Fax)
mjciresi@ciresilaw.com

# TABLE OF CONTENTS

Judgment of Conviction..................................................................................1

Excerpt Plea Agreement...............................................................................8

Excerpt Sentencing Hearing........................................................................10

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of Puerto Rico

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| Jose Angel Velazquez-Seda | Case Number:  3:22-cr-00409-15 (SCC) |
| | USM Number:  40070-069 |
| | Luis E. Tomassini-Segarra |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s) ___One of the Indictment on 9/12/2023___

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:841(a)(1),846 & 860 | Conps. to possess with intent to distribute controlled subs. | 9/14/2022 | One |

The defendant is sentenced as provided in pages 2 through ___1___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s) ___remaining___   ☐ is   ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/9/2024
Date of Imposition of Judgment

S/  Silvia L. Carreno-Coll
Signature of Judge

Silvia L. Carreno-Coll, U.S. District Judge
Name and Title of Judge

2/9/2024
Date

1

AO 245B (Rev. 09/19)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page _____ of ___1___

DEFENDANT:   Jose Angel Velazquez-Seda
CASE NUMBER:   3:22-cr-00409-15 (SCC)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Ninety-six (96) months.

☐ The court makes the following recommendations to the Bureau of Prisons:

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m.  ☐ p.m.  on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
               Sheet 3 — Supervised Release
_____

Judgment—Page _____ of ____1____

DEFENDANT:   Jose Angel Velazquez-Seda
CASE NUMBER:   3:22-cr-00409-15 (SCC)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

  Eight (8) years.

## MANDATORY CONDITIONS

1.    You must not commit another federal, state or local crime.
2.    You must not unlawfully possess a controlled substance.
3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
        ☐ The above drug testing condition is suspended, based on the court's determination that you
           pose a low risk of future substance abuse. *(check if applicable)*
4.    ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of
        restitution. *(check if applicable)*
5.    ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.    ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as
        directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you
        reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.    ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

3

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

Judgment—Page _____ of _____ 1

DEFENDANT:  Jose Angel Velazquez-Seda
CASE NUMBER:  3:22-cr-00409-15 (SCC)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

4

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3B — Supervised Release

| | Judgment—Page | of | 1 |

DEFENDANT:   Jose Angel Velazquez-Seda
CASE NUMBER:   3:22-cr-00409-15 (SCC)

## ADDITIONAL SUPERVISED RELEASE TERMS

1. The defendant shall not commit another Federal, state, or local crime, and shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. The defendant shall not unlawfully possess controlled substances.

3. The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons.

4. The defendant shall participate in transitional and reentry support services, including cognitive behavioral treatment services, under the guidance and supervision of the Probation Officer. The defendant shall remain in the services until satisfactorily discharged by the service provider with the approval of the Probation Officer.

5. The defendant shall provide the U.S. Probation Officer access to any financial information upon request.

6. The defendant shall participate in an approved substance abuse monitoring and/or treatment services program. The defendant shall refrain from the unlawful use of controlled substances and submit to a drug test within fifteen (15) days of release; thereafter, submit to random drug testing, no less than three (3) samples during the supervision period and not to exceed 104 samples per year accordance with the Drug Aftercare Program Policy of the U.S. Probation Office approved by this Court. If deemed necessary, the treatment will be arranged by the officer in consultation with the treatment provider. The defendant is required to contribute to the cost of services rendered (co-payment) in an amount arranged by the Probation Officer based on the ability to pay or availability of third-party payment.

7. The defendant shall submit his person, property, house, vehicle, papers, computers (as defined in Title 18 U.S.C. Section 1030(e)(1)), other electronic communication or data storage devices, and media, to a search conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

8. The defendant shall cooperate in the collection of a DNA sample as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563(a)(9).

5

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
       Sheet 5 — Criminal Monetary Penalties

Judgment — Page _____ of _____ 1

DEFENDANT: Jose Angel Velazquez-Seda
CASE NUMBER: 3:22-cr-00409-15 (SCC)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss***** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

6

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 6 — Schedule of Payments

Judgment — Page _____ of ___1___

DEFENDANT:  Jose Angel Velazquez-Seda
CASE NUMBER:  3:22-cr-00409-15 (SCC)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑  Lump sum payment of $ ___100.00___ due immediately, balance due

         ☐  not later than _____ , or
         ☐  in accordance with ☐  C,   ☐  D,   ☐  E, or   ☐  F below; or

**B**  ☐  Payment to begin immediately (may be combined with   ☐  C,   ☐  D, or   ☐  F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
         _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
         _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
         term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
         imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

Case Number
Defendant and Co-Defendant Names          Joint and Several          Corresponding Payee,
*(including defendant number)*          Total Amount          Amount          if appropriate

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:
The defendant shall forfeit all rights and titles to the United States as stipulated by the parties in paragraph # 23 of the Plea and Forfeiture Agreement.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

### 6. Sentence to be Determined by the Court

Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence Defendant will receive. Any discussions that the parties might have had about possible sentences are not binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.

### 7. Recommended Sentencing Guidelines Calculations

After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States and Defendant submit that the advisory Guidelines calculations listed below apply to Defendant. However, Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.



| Sentencing Guidelines Calculations Table<br>COUNT ONE<br>18 USC § 841(a)(1), (b)(1)(B) and § 846<br>(Conspiracy to Possess with Intent to Distribute Controlled Substances) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Base Offense Level U.S.S.G. § 2D1.1 (c)(7)**<br>At least 2 KG but less than 3.5 KG of Cocaine; | | | | | | | | 26 |
| Protected Location USSG § 2D1.2(a)(1) | | | | | | | | +2 |
| Acceptance of Responsibility, U.S.S.G. **§ 3E1.1 (a)&(b)** | | | | | | | | -3 |
| TOL | CHC I | CHC II | CHC III | CHC IV | CHC V | CHC VI | Total Offense Level | 25 |
| 25 | 057-071 | 063-078 | 070-087 | 084-105 | 100-125 | 110-137 | | |

**8. Sentence Recommendation**

As to Count One, and after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agree that the defendant may argue for a sentence of 60 months of imprisonment while the Government reserves the right to argue for a sentence of up to 72 months of imprisonment, regardless of criminal history category. The parties acknowledge that Count One carries a mandatory minimum sentence of sixty (60) months of imprisonment.

The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

**9. No Stipulation as to Criminal History Category**

The parties do not stipulate as to any Criminal History Category for Defendant.

**10. Waiver of Appeal**

Defendant knowingly and voluntarily agrees that, if the imprisonment sentence imposed by the Court is 72 months or less, Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

**11. No Further Adjustments or Departures**

The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variant sentence under 18

Sentencing Hearing - [15] José Angel Velázquez-Seda

1   has been suffering from this heart condition.

2          Also -- we would like to acknowledge also

3   that his family is right here with us in the

4   courtroom.  His wife has been his support system

5   through the whole process and will be after his

6   release from prison.  He also will be -- a former

7   employer also has a space for him once he comes out

8   of prison for a job for Mr. Velázquez.

9          Although we know that he has some extensive

10  criminal history, Mr. Velázquez is very repentant and

11  he has learned his lesson.  He's mature enough.

12  Although he's 47 years old, but at this time he

13  clearly wants to leave his past life and have some

14  time, his time left, with his family and his

15  children.  And please, Your Honor, keep in

16  consideration his health issues.  So we request that

17  this Court sentence Mr. Velázquez to 60 months'

18  imprisonment, Your Honor.

19          THE COURT:  Ms. Theriot.

20          MS. THERIOT:  Your Honor, it's the position

21  of the government, in accordance with the plea

22  agreement, that 72 months is the appropriate

23  sentence.  I base that on the significant criminal

24  history which includes multiple acts of domestic

25  violence and a previous 841 conviction in 2012.

Sentencing Hearing - [15] José Angel Velázquez-Seda

1      THE COURT:  And it's still a variant
2  sentence from the applicable guideline which is from
3  120 to 150 months.
4      MS. THERIOT:  I agree, Your Honor.  I'm
5  bound by the plea agreement so --
6      THE COURT:  I'm aware.  I am aware.
7      MS. THERIOT:  But the Court has discretion
8  obviously to do what the Court thinks is the correct
9  sentence in this case.  And it is a significant
10  criminal history with a Category V.
11      THE COURT:  All right.  Okay.
12      Anything else, Mr. Tomassini?
13      MR. TOMASSINI-SEGARRA:  Nothing further,
14  Your Honor, from us.
15      THE COURT:  Okay.  Mr. Velázquez, you have
16  the right to allocution which means that you can
17  address the Court at this time if you want to do so
18  or address your family.
19      THE DEFENDANT:  First of all, Your Honor, I
20  would like to give you thanks to allow myself to
21  express myself and also address my family.  I'm going
22  to continue moving forward and do things properly.  I
23  was in the free community right now and I have a new
24  family and they count on me.  I'm their support.  I
25  support the home.  And that would be all.  And thank